**SO ORDERED.**

**SIGNED this 11 day of March, 2011.**

_____
J. Rich Leonard
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | |
| AMERLINK, LTD., | CASE NUMBER: 09-01055-8-JRL |
| | CHAPTER 7 |
| Debtor. | |
| | |
| IN RE: | |
| STEPHEN L. BEAMAN, TRUSTEE | ADVERSARY PROCEEDING NO. 10-00164-8-JRL |
| Plaintiff, | |
| v. | |
| JOHN M. BARTH, JR. AND WIFE TRACY M. BARTH; RICHARD B. SPOOR AND WIFE WALTON SPOOR; JOHN M. BARTH AND WIFE EILEEN M. BARTH; HARLINGEN STABLES, INC.; TALL GRASS FARMS, INC.; PRO-FORM CONSTRUCTION, INC.; NATIONAL CONSUMER COOPERATIVE BANK; THOMAS R. SLOCUM; TERRY CASTLE; STEVEN J. GUGENHEIM; HORIZON TRUST & INVESTMENT MANAGEMENT, N.A.; JR INTERNATIONAL HOLDINGS, LLC; AND CAPITAL COMMUNITY FOUNDATION, INC., | |
| Defendants. | |

**ORDER**

This matter came before the court on the motions to dismiss filed separately by each named defendant. A hearing was held on January 25, 2011, in Raleigh, North Carolina. Prior to the hearing, Walton Spoor, Eileen Barth, Tracy Barth, and Horizon Trust & Investment Management, N.A. were dismissed from the adversary proceeding by consent order. John M. Barth, Sr. was voluntarily dismissed as to the thirteenth claim.

**PROCEDURE**

The underlying bankruptcy was filed by the debtor under chapter 11 on February 11, 2009. On November 23, 2009, the case was converted to a case under chapter 7. Steven L. Beaman was duly appointed as the chapter 7 trustee. Subsequently, on July 23, 2010, the trustee filed a complaint, initiating this adversary proceeding. The complaint states thirteen specific claims for relief. Due to the complexity of the claims, the court will render decisions in multiple orders. This order will address claim six, alter ego, specifically. In an effort to decrease confusion and fractionalized response deadlines, Bankruptcy Rule 7012(a) shall be temporarily suspended as to all parties and on all claims. A new deadline for filing responsive pleadings will be set by the court upon entry of the final motion to dismiss order.

**BACKGROUND**[1]

When the debtor was formed, defendant Richard B. Spoor ("Spoor") was the sole owner and shareholder of the corporation. AmerLink, Ltd. ("AmerLink") was in the business of log home manufacturing, e.g., processing logs into home kits and contracting for installation of

---

[1] These facts are a fair distillation of the complaint taken in the light most favorable to plaintiff. That said, the complaint is not a model of clarity as it does not always proceed chronologically, and it is not clear which defendants are implicated in the various counts.

homes. In the fall of 2006, groundwork was laid for the creation of an AmerLink employee stock option plan ("ESOP"). The ESOP was adopted on September 29, 2006, with an effective date of October 1, 2005. Horizon Trust & Investment Management, N.A. ("Horizon") acted as trustee for the ESOP. Eleven days prior to adoption of the ESOP, September 18, 2006, John M. Barth, Jr. ("Junior") was hired as President and CEO of the debtor. During this time, Thomas R. Slocum was a director and officer of the debtor, serving as the Vice President and Secretary. AmerLink's business records showed assets, property, and equipment valued at approximately $17,036,117.00 at the time of the ESOP adoption. The same records indicated long term liabilities totaling approximately $11,933,502.00. Retained earnings were $4,895,078.00.

On December 8, 2006, Pro-Form Construction, Inc. ("Pro-Form") was created as a subsidiary of the debtor. AmerLink was the sole shareholder of Pro-Form. Shortly thereafter, on December 14, 2006, Spoor, as AmerLink's sole shareholder, reconstituted AmerLink's board of directors. Spoor was elected chairman of the board. Junior, Slocum, Stephen Gugenheim, and Terry Castle were also elected to AmerLink's board of directors on the same date. Gugenheim and Castle refer to themselves as the "outside directors" because they were not members of the board at the time the ESOP was created. On December 19, 2006, two separate entities, In The Woods, Inc. ("Woods") and Harlingen Holdings, Inc. ("Harlingen Holdings") were merged into the debtor. Spoor controlled both Woods and Harlingen Holdings at the time of merger. Less than a week later, on December 21, 2006, AmerLink adopted the first amendment to the ESOP. The effective date of the first amendment was December 30, 2006.

One day prior to the effective date of the first amendment, December 29, 2006, AmerLink and Pro-Form entered into a contribution agreement that provided for the transfer of

assets from AmerLink to Pro-Form.  In exchange for transferred assets, AmerLink received 100% ownership of Pro-Form.  Thereafter, AmerLink transferred ownership of Pro-Form to Spoor; however, this is an area of ambiguity.  To the best of the court's ability to decipher the complexity of interwoven transactions plead in the complaint, it appears Spoor took ownership to Pro-Form through Harlingen Stables, Inc. ("Harlingen Stables"), a separate entity controlled by Spoor.  In addition to passing ownership of Pro-Form, AmerLink made continual monthly payments for alleged antecedent debts on behalf of Harlingen Stables.  The same is true for a Spoor-owned corporation known as Tall Grass Farms, Inc. ("Tall Grass").

On February 12, 2007, Spoor transferred 49% of his shares in AmerLink to the ESOP.  The ESOP purchased the stock for $13,250,000.00, evidenced by a promissory note in favor of Spoor (the "ESOP note").  On or about the same date, Capital Community Foundation, Inc. ("Capital"), a non-profit, also received shares of stock in AmerLink.  Capital sold the 17,177 shares of AmerLink stock to the ESOP for $350,000.00, evidenced by a promissory note.  As a result of the Woods and Harlingen Holdings mergers, payment of debts on behalf of Harlingen Stables and Tall Grass, dealings with Pro-Form, and transactions with the ESOP, the debtor's balance sheet dated March 3, 2007 reflects assets of $12,612,328.00 and liabilities of $23,536,671.11.

Six months following the transfers of AmerLink stock, on August 7, 2007, AmerLink entered into three loan transactions with National Consumer Cooperative Bank ("NCCB").  Although the debtor's liabilities outweighed its assets, NCCB loaned a total of $13,000,000.00: $8,000,000.00; $2,000,000.00; and, $3,000,000.00, respectively.  From the loan proceeds, AmerLink paid the ESOP $4,719,370.36; which, the ESOP in return paid to Spoor on account of

the ESOP note. Spoor allegedly used this payment to fund a certificate of deposit in favor of NCCB; which, the bank required under the lending terms as security.

The following year, on September 15, 2008, Spoor and Junior formed JR International Holdings, LLC ("JR"). Under the operating agreement dated October 9, 2008, Spoor and Junior were 50% owners of JR. In consideration for ownership, Spoor transferred his remaining 51% interest in AmerLink valued at $8,000,000.00 to JR. Junior, having no stock to transfer, agreed to pay an equal sum. Junior anticipated help financing the $8,000,000.00 from his father, John M. Barth, Sr. ("Senior"). Senior wrote a check to Junior in the amount of $300,000.00; however, no further financial assistance was provided.

The plaintiff contends that Spoor exerted complete control over Pro-Form, Harlingen Stables, Tall Grass, and JR, and used the entities to further personal interests; so that, in reality, Spoor and the corporate entities were indivisible. The plaintiff alleges the same with respect to Junior and JR. Spoor and Junior assert that the plaintiff lacks a basis to pierce the corporate veil, having failed to establish facts that would satisfy the instrumentality test.

## DISCUSSION

As a general matter, a corporation is presumed to be a separate and distinct entity in relation to its underlying shareholders. Troy Lumber Co. v. Hunt, 251 N.C. 624, 627, 112 S.E.2d 132, 134 (1960). A shareholder or an officer of a corporation is generally not liable for the debts or liabilities of the corporation. N.C. GEN. STAT. §55B-9. However, the Supreme Court held "that the corporate veil may be pierced and the shareholder held liable for the corporation's conduct when, *inter alia,* the corporate form would otherwise be misused to accomplish certain

5

wrongful purposes, most notably fraud, on the shareholder's behalf." U.S. v. Bestfoods, 524 U.S. 51, 62 (1998).

The equitable doctrine of piercing the corporate veil is recognized in North Carolina and has been implemented through the use of the "instrumentality rule." Glenn v. Wagner, 313 N.C. 450, 454, 329 S.E.2d 326, 330 (1985). Specifically, where the corporation is "a mere instrumentality or alter ego of the sole or dominant shareholder and a shield for his activities in violation of declared public policy or statute of the State, the corporate entity will be disregarded." Henderson v. Security Mortg. & Finance Co., 273 N.C. 253, 260, 160 S.E.2d 39, 44 (1968). North Carolina law also recognizes "reverse piercing," where one entity is the alter-ego of another entity, shareholder, or officer, so that the two entities may be treated like one-in-the same. Strategic Outsourcing, Inc. v. Stacks, 176 N.C. App. 247, 254, 625 S.E.2d 800, 804 (2006).

The instrumentality test consists of three distinct elements that must be proven to prevail in an action to pierce the corporate veil: "(1) stockholders' control of the corporation amounting to 'complete domination' with respect to the transaction at issue; (2) stockholders' use of this control to commit a wrong, or to violate a statutory or other duty in contravention of the other party's rights; and (3) this wrong or breach of duty must be the proximate cause of the injury to the other party." State ex. rel. Cooper v. Ridgeway Brands Mfg., LLC, 362 N.C. 431, 441(2008)(citing Glen, 313 N.C. at 454-55, 329 S.E.2d at 330).

Under an analysis of instrumentality, "control" is determined by the following factors: inadequate capitalization; non-compliance with corporate formalities; complete domination; and, excessive fragmentation. Glenn, 313 N.C. at 455, 329 S.E. 2d at 330 (citing B-W

Acceptance Corp. v. Spencer, 268 N.C. 1, 9, 149 S.E. 2d 570, 576 (1966)).  Existence of a factor, or lack thereof, is not fatal to the determination of control.  Rather control may be established by "a combination of factors which, when taken together with an element of injustice or abuse of corporate privilege, suggest that the corporate entity attacked had 'no separate mind, will or existence of its own' and was therefore the 'mere instrumentality or tool' of the dominant corporation." Glenn, 313 N.C. at 458, 329 S.E.2d at 332.

After careful analysis of the complaint, taken as true and in the light most favorable to plaintiff, the court concludes that the plaintiff has sufficiently plead facts to withstand the motions to dismiss claim number six as to Spoor.  Specifically, but not limited to, paragraphs 35, 38, 46, 53, and 96 clearly allege that Spoor had complete control of AmerLink.  Based upon the allegations, Spoor caused AmerLink to adopt the ESOP.  Following the adoption of the ESOP or shortly thereafter, AmerLink, at Spoor's direction, was a party to mergers, contribution agreements, payments of alleged antecedent debts of separate entities, and acquisition of new debt.  As plead in paragraph 96, this assertion of control was in furtherance of wrongs and breaches of duty owed to Amerlink.  These allegations satisfy the first two prongs of the instrumentality test.  The final prong, "proximate cause," is established in paragraph 97 of the complaint which states, "The acts . . . were the proximate cause of injuries and damages suffered by AmerLink . . . as a result AmerLink was destroyed as a viable company and was damaged in an amount not less than $25,000,000.00."  Paragraph 58 further bolsters the proximate cause requirement.  Asserting that the transactions described within the complaint, taken as a whole, are part of a greater scheme for personal gain, paragraph 58 stated that such actions "crippled" AmerLink and resulted in the company's insolvency.

Alter ego in the form of reverse piercing, is not sufficiently plead with respect to Harlingen Stables, Tall Grass, Pro-Form, or JR. At best, the complaint shows that these four separate entities were owned by Spoor, and received payment or assets of AmerLink. The insinuation is that Spoor used Harlingen Stables, Tall Grass, Pro-Form, and JR to hide assets from AmerLink creditors for himself; however, there is no foundation in the complaint to support the premise that these entities committed a wrong or caused injury by holding or accepting assets of AmerLink. Therefore, under the allegations plead, the second and third prong of the instrumentality test are not satisfied. Whether allegations of holding money, traceable to AmerLink, is sufficient for a claim of constructive trust is also before the court; but, the claim for a constructive trust will be addressed in a separate order.

The claim for alter ego is also dismissed with regard to Junior. On the facts before the court, Junior was President of AmerLink when the ESOP was adopted and sat on AmerLink's board of directors during the period of allegedly relevant transactions. However, there is no evidence that Junior held an equity interest in AmerLink. As such, the transactions involving AmerLink were not instrumental towards Junior's personal gain. Under the scheme alleged by the plaintiff, Junior may eventually have received an interest through JR; but, that ownership interest was not consummated. Thus, the instrumentality test, as applied to Junior, fails entirely.

Based on the foregoing, the motions to dismiss claim six, alter ego, are DENIED as to Spoor. The motions to dismiss claim six are ALLOWED with regard to Harlingen Stables, Tall Grass, Pro-Form, JR, and Junior.

**END OF DOCUMENT**