**SO ORDERED.**

**SIGNED this 11 day of March, 2011.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

| | |
|---|---|
| AMERLINK, LTD., | CASE NUMBER: 09-01055-8-JRL |
| | CHAPTER 7 |
| Debtor. | |

IN RE:

| | |
|---|---|
| STEPHEN L. BEAMAN, TRUSTEE | ADVERSARY PROCEEDING NO. 10-00164-8-JRL |
| Plaintiff, | |
| v. | |
| JOHN M. BARTH, JR. AND WIFE TRACY M. BARTH; RICHARD B. SPOOR AND WIFE WALTON SPOOR; JOHN M. BARTH AND WIFE EILEEN M. BARTH; HARLINGEN STABLES, INC.; TALL GRASS FARMS, INC.; PRO-FORM CONSTRUCTION, INC.; NATIONAL CONSUMER COOPERATIVE BANK; THOMAS R. SLOCUM; TERRY CASTLE; STEVEN J. GUGENHEIM; HORIZON TRUST & INVESTMENT MANAGEMENT, N.A.; JR INTERNATIONAL HOLDINGS, LLC; AND CAPITAL COMMUNITY FOUNDATION, INC., | |
| Defendants. | |

**ORDER**

This matter came before the court on the motions to dismiss filed separately by each named defendant. A hearing was held on January 25, 2011, in Raleigh, North Carolina. Prior to the hearing, Walton Spoor, Eileen Barth, Tracy Barth, and Horizon Trust & Investment Management, N.A. were dismissed from the adversary proceeding by consent order. John M. Barth, Sr. was voluntarily dismissed as to the thirteenth claim.

**PROCEDURE**

The underlying bankruptcy was filed by the debtor under chapter 11 on February 11, 2009. On November 23, 2009, the case was converted to a case under chapter 7. Steven L. Beaman was duly appointed as the chapter 7 trustee. Subsequently, on July 23, 2010, the trustee filed a complaint, initiating this adversary proceeding. The complaint states thirteen specific claims for relief. Due to the complexity of the claims, the court will render decisions in multiple orders. This order will address the second claim, preferential transfers, asserted against defendants Richard B. Spoor, Pro-Form Construction, Inc., Harlingen Stables, Inc., and Tall Grass Farms, Inc.

**BACKGROUND**[1]

When the debtor was formed, defendant Richard B. Spoor ("Spoor") was the sole owner and shareholder of the corporation. AmerLink, Ltd. ("AmerLink") was in the business of log home manufacturing, e.g., processing logs into home kits and contracting for installation of homes. In the fall of 2006, groundwork was laid for the creation of an AmerLink employee

---

[1] These facts are a fair distillation of the complaint taken in the light most favorable to plaintiff. That said, the complaint is not a model of clarity as it does not always proceed chronologically, and it is not clear which defendants are implicated in the various counts.

stock option plan ("ESOP").  The ESOP was adopted on September 29, 2006, with an effective date of October 1, 2005.  Horizon Trust & Investment Management, N.A. ("Horizon") acted as trustee for the ESOP.  Eleven days prior to adoption of the ESOP, September 18, 2006, John M. Barth, Jr. ("Junior") was hired as President and CEO of the debtor.  During this time, Thomas R. Slocum was a director and officer of the debtor, serving as the Vice President and Secretary.  AmerLink's business records showed assets, property, and equipment valued at approximately $17,036,117.00 at the time of the ESOP adoption. The same records indicated long term liabilities totaling approximately $11,933,502.00. Retained earnings were $4,895,078.00.

On December 8, 2006, Pro-Form Construction, Inc. ("Pro-Form") was created as a subsidiary of the debtor. AmerLink was the sole shareholder of Pro-Form.  Shortly thereafter, on December 14, 2006, Spoor, as AmerLink's sole shareholder, reconstituted AmerLink's board of directors.  Spoor was elected chairman of the board.  Junior, Slocum, Stephen Gugenheim, and Terry Castle were also elected to AmerLink's board of directors on the same date.  Gugenheim and Castle refer to themselves as the "outside directors" because they were not members of the board at the time the ESOP was created.  On December 19, 2006, two separate entities, In The Woods, Inc. ("Woods") and Harlingen Holdings, Inc. ("Harlingen Holdings") were merged into the debtor.  Spoor controlled both Woods and Harlingen Holdings at the time of merger.  Less than a week later, on December 21, 2006, AmerLink adopted the first amendment to the ESOP.  The effective date of the first amendment was December 30, 2006.

One day prior to the effective date of the first amendment, December 29, 2006, AmerLink and Pro-Form entered into a contribution agreement that provided for the transfer of assets from AmerLink to Pro-Form.  In exchange for transferred assets, AmerLink received

-3-

100% ownership of Pro-Form. Thereafter, AmerLink transferred ownership of Pro-Form to Spoor; however, this is an area of ambiguity. To the best of the court's ability to decipher the complexity of interwoven transactions plead in the complaint, it appears Spoor took ownership to Pro-Form through Harlingen Stables, Inc. ("Harlingen Stables"), a separate entity controlled by Spoor. Plaintiff alleges AmerLink made continual monthly payments for antecedent debts on behalf of Harlingen Stables. Plaintiff alleges the same for a Spoor-owned corporation known as Tall Grass Farms, Inc. ("Tall Grass").

On February 12, 2007, Spoor transferred 49% of his shares in AmerLink to the ESOP. The ESOP purchased the stock for $13,250,000.00, evidenced by a promissory note in favor of Spoor (the "ESOP note"). On or about the same date, Capital Community Foundation, Inc. ("Capital"), a non-profit, also received shares of stock in AmerLink. Capital sold the 17,177 shares of AmerLink stock to the ESOP for $350,000.00, evidenced by a promissory note. As a result of the Woods and Harlingen Holdings mergers, payment of debts on behalf of Harlingen Stables and Tall Grass, dealings with Pro-Form, and transactions with the ESOP, the debtor's balance sheet dated March 3, 2007 reflects assets of $12,612,328.00 and liabilities of $23,536,671.11.

Six months following the transfers of AmerLink stock, on August 7, 2007, AmerLink entered into three loan transactions with National Consumer Cooperative Bank ("NCCB"). Although the debtor's liabilities outweighed its assets, NCCB loaned a total of $13,000,000.00: $8,000,000.00; $2,000,000.00; and, $3,000,000.00, respectively. From the loan proceeds, AmerLink paid the ESOP $4,719,370.36; which, the ESOP in return paid to Spoor on account of the ESOP note. Spoor allegedly used this payment to fund a certificate of deposit in favor of

NCCB; which, the bank required under the lending terms as security.

## DISCUSSION

Defendants Spoor, Pro-Form, Harlingen Stables, and Tall Grass move to dismiss the preferential transfer claim because the pleadings fail to state a claim to which the pleader is entitled to relief pursuant to Federal Rule of Bankruptcy Procedure 7008(a)(2) and Federal Rule of Civil Procedure 8(a)(2). In asserting a claim to avoid a preferential transfer under 11 U.S.C. §547, a trustee must plead sufficient factual allegations to establish a preference claim for relief that is plausible. Angell v. Ber Care, Inc. (In re Caremerica, Inc.) 409 B.R. 737, 750 (Bankr. E.D.N.C. 2009). The elements of a preference cause of action are: (1) a transfer of an interest of the debtor in property; (2) to or for the benefit of a creditor; (3) for or on account of an antecedent debt owed by the debtor before such transfer was made; (4) made while the debtor was insolvent; (5) made within one year before the date of filing if such creditor at the time of such transfer was an insider;[2] (6) that enables such creditor to receive more than such creditor would receive if the case were under chapter 7. 11 U.S.C. §547(b). The heightened pleading standards in Bell Atl. Corp. v. Twombly and Ashcroft v. Iqbal apply to pleadings of preference actions. Ber Care, Inc., 409 B.R. at 750. Specifically, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Iqbal, 129 S. Ct. 1937, 1949 (citing Twombly, 550 U.S. 544, 555). To comply with the heightened pleading standards for § 547 claims, the complaint must include (a) an identification of the nature and amount of each antecedent debt and (b) an identification of each alleged preferential transfer by (i) date, (ii)

---

[2]The plaintiff alleges that the defendants were insiders, and thus subject to the one-year preference period, as opposed to the 90-day period for non-insiders.

name of debtor/transferor, (iii) name of transferee and (iv) amount of the transfer.  Ber Care, Inc., 409 B.R. at 748 (citing Valley Media v. Borders (In re Valley Media), 288 B.R. 189, 192 (Bankr. D. Del. 2003)).

The complaint at issue is largely conclusory, stating that the debtor transferred property to or for the benefit of Spoor directly or to entities controlled by him—Pro-Form, Harlingen Stables, and Tall Grass—on account of antecedent debts while the debtor was insolvent within the year prior to the petition date.  There is some elaboration on the transfers.  The plaintiff attaches Exhibit 24, a list of payments totaling $178,140.14, which plaintiff states were made to Harlingen Stables, Tall Grass, and others.  Exhibit 24 includes the transferees (e.g. "Tall Grass Farms Payroll"), the dates of transfers, and the amount.

Turning to the elements of a preference claim, the court next determines whether the cause of action has been properly pled.  First, plaintiff must assert facts showing that the debtor had an interest in the property transferred.  Ber Care Inc., 409 B.R. at 750.  Exhibit 24 includes the names of transferees, but does not indicate that the debtor was the transferor.  The property transferred could have been that of the creditors themselves and represent a list of transfers between them; it is unclear from the complaint.  Second, plaintiff must assert the transfers were made to or for the benefit of a creditor.  While Exhibit 24 labels some of the transferees—e.g. "Tall Grass Farms Payroll," "Harlingen Stables Payroll"—it fails to specify to whom the benefit of other transfers were made—e.g. "Gas," "Petty Cash".

Although a listing of names of transferees, dates and amounts of each transfer is sufficient to assert that funds were in fact transferred, the transferee's identity as a creditor is contingent on the existence of an antecedent debt.  Ber Care Inc., 409 B.R. at 751.  This

constitutes the third element of a preference cause of action.  Mere conclusory statements that the transfers were made on account of an antecedent debt owed by the transferor are insufficient. Id.  Here, the complaint includes one such conclusory statement.  Plaintiff elaborates that the payments were made by the debtor on a balance due under the contribution agreement between AmerLink and Pro-Form, dated December 29, 2006.  As stated above, to the best of the court's ability to decipher the facts of the complaint, Spoor took title to Pro-Form through Harlingen Stables, therefore Harlingen Stables would also be a creditor of the contribution agreement.  This still leaves some deficiencies in the pleading of the "antecedent debt" element.  First, it is unclear how Tall Grass is a creditor of the contribution agreement.  The complaint defines Tall Grass as a corporation owned by Harlingen Stables, which perhaps links Tall Grass to the contribution agreement as another creditor of the antecedent debt, but not explicitly so.  Second, the complaint describes the contribution as already being executed.  The factual allegations state in paragraph 41 that AmerLink transferred assets to Pro-Form and assigned its rights and obligations under various contracts to Pro-Form.  Based on this description, it appears as though the debt was satisfied rather than remaining outstanding during the preference period. Regardless, the complaint does not specifically assert sufficient facts of the nature and amount of the antecedent debt.

      The complaint must also allege that the preferential transfer was made while the debtor was insolvent.  Although the Bankruptcy Code allows the trustee to presume a debtor to be insolvent within the 90-day period prior to filing, insolvency is not presumed from the 90-day period until the year prior to filing.  § 547(f).  Since the plaintiff alleges these transfers were made by insiders and subject to the one-year preference period, plaintiff must provide facts of

the debtor's insolvency beyond the 90-day presumption. Conclusory statements that the transfers were made while the debtor was insolvent fail to satisfy the requirements under Iqbal. Ber Care Inc., 409 B.R. at 752. Plaintiff's complaint includes one such conclusory statement in paragraph 75.

Next, for transfers made by insiders, the plaintiff must assert the transfers were made within one year of the petition date. Regarding the timing of the transfers, the complaint refers to the list of transfers in Exhibit 24 totaling $178,140.14 and includes dates for each transfer. All of these transfers fall within the year preceding the petition date, and are therefore properly pled with respect to timing. Plaintiff also attempts to allege that $416,303.92 was paid to Spoor through the ESOP within the year prior to filing. Although plaintiff refers to Exhibit 24, this particular transfer in this amount, or even cumulative transfers which total $416,303.92, is not listed on Exhibit 24. This court has held that with respect to the timing of the transfer, a mere recital of the element "made within one year of filing" is insufficient to plead that element. Ber Care Inc., 409 B.R. at 752. Since a more specific date or dates of the transfer or transfers to Spoor through the ESOP have not been provided, the plaintiff has failed the heightened pleading requirements as to the ESOP transfer.

Regarding insider status, the Bankruptcy Code defines an insider as, among other things, a person in control of the debtor. § 101(31). This court has found it sufficient to allege that transferees were insiders as a result of their control of the debtor or status as "managing agents" of the debtor. See Ber Care Inc., 409 B.R. at 753 (citing In re Oakwood Homes, 340 B.R. 510, 524 (Bankr. D. Del. 2006)). Here, the complaint sufficiently alleges that the defendants, Spoor, Tall Grass, Harlingen Stables, and Pro-Form, are insiders. It states that the companies are owned

and/or controlled by Spoor, who is an insider of the debtor himself, as he chaired the Board of Directors of the debtor. Therefore, the plaintiff has sufficiently pled this fifth element.

Finally, for a preference cause of action to be sufficiently pled, the complaint must assert facts that the transfers enabled the creditor to receive more than it would in a chapter 7 liquidation. This analysis requires "a comparison between what the creditor actually received and what it would have received under [chapter 7]." 5 Collier on Bankruptcy ¶547.03[7] (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev.). Generally, it is sufficient to show that unsecured creditors would receive less than 100%, id., or that the debtor's summary of schedules reflect liabilities far greater than assets. Ber Care Inc., 409 B.R. at 754 (citing Precision Walls Inc. v. Crampton, 196 B.R. 299, 303 (E.D.N.C. 1996)). Here, plaintiff asserts that the trustee liquidated unencumbered assets and received approximately $78,386.23. Plaintiff states the administrative claims alone exceed this amount. Furthermore, the plaintiff states that secured claims exceed $12 million, priority claims exceed $3.57 million, and unsecured claims exceed $20 million. Therefore, the plaintiff has sufficiently asserted that liabilities are far greater than assets and that the alleged creditors received more than they would under chapter 7 as a result of the preferential transfers.

Although plaintiff has sufficiently pled some of the elements of a preference cause of action, all elements must be properly pled in order to comply with the heightened pleading requirements of Rule 8(a)(2) and Iqbal. Based on the facts alleged in the pleadings, however, the court finds it appropriate to grant the plaintiff another opportunity to sufficiently plead a preference cause of action. The court hereby GRANTS the defendants' motion to dismiss the preferential transfer claims with leave to amend the pleadings. The obligation of the plaintiff to

amend his pleadings is suspended until the court rules on all of the pending motions to dismiss, at which point the court will set appropriate deadlines.

**END OF DOCUMENT**