**SO ORDERED.**

**SIGNED this 15 day of March, 2011.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:

| | |
|---|---|
| AMERLINK, LTD., | CASE NUMBER: 09-01055-8-JRL |
| | CHAPTER 7 |
| DEBTOR. | |

IN RE:

| | |
|---|---|
| STEPHEN L. BEAMAN, | ADVERSARY PROCEEDING |
| TRUSTEE, | NO. 10-00164-8-JRL |
| Plaintiff, | |
| v. | |
| JOHN M. BARTH, JR. AND WIFE TRACY M. BARTH; RICHARD B. SPOOR AND WIFE WALTON SPOOR; JOHN M. BARTH AND WIFE EILEEN M. BARTH; HARLINGEN STABLES, INC.; TALL GRASS FARMS, INC.; PRO-FORM CONSTRUCTION, INC.; NATIONAL CONSUMER COOPERATIVE BANK; THOMAS R. SLOCUM; TERRY CASTLE; STEVEN J. GUGENHEIM; HORIZON TRUST & INVESTMENT MANAGEMENT, N.A.; JR INTERNATIONAL HOLDINGS, LLC; AND CAPITAL COMMUNITY FOUNDATION, INC., | |
| Defendants. | |

**ORDER**

This matter came before the court on the motions to dismiss filed separately by each named defendant. A hearing was held on January 25, 2011, in Raleigh, North Carolina. Prior to the hearing, Walton Spoor, Eileen Barth, Tracy Barth, and Horizon Trust & Investment Management, N.A. were dismissed from the adversary proceeding by consent order. John M. Barth ("Senior") was voluntarily dismissed as to the thirteenth claim.

**PROCEDURE**

The underlying bankruptcy was filed by the debtor as a chapter 11 on February 11, 2009. On November 23, 2009, the case was converted to a case under chapter 7. Stephen L. Beaman was duly appointed as the chapter 7 trustee. Subsequently, on July 23, 2010, the trustee filed a complaint, initiating this adversary proceeding. The compliant states thirteen specific claims for relief. Due to the complexity of the claims, the court will render judgment ad seriatim. This order will address claims three and four, breach of fiduciary duties and constructive trust respectively.

**BACKGROUND**

When the debtor originated, defendant Richard B. Spoor ("Spoor") was the sole owner and shareholder of the corporation. AmerLink, Ltd. ("AmerLink") was in the business of log home manufacturing, e.g., processing logs into home kits and contracting for installations of homes. In the fall of 2006, groundwork was laid for the creation of an AmerLink employee stock option plan ("ESOP"). The ESOP was adopted on September 29, 2006, with an effective date of October 1, 2006. Horizon Trust & Investment Management, N.A. ("Horizon") acted as trustee for the ESOP. Eleven days prior to adoption of the ESOP, September 18, 2006, John M.

Barth, Jr. ("Junior") was hired as President and CEO of the debtor. During this time, Thomas R. Slocum was an officer of the debtor serving as the Vice President and Secretary. AmerLink's business records showed assets, property, and equipment valued at approximately $17,036,117.00 at the time of the ESOP adoption. The same records indicated long term liabilities totaling approximately $11,933,502.00. Retained earnings were $4,895,078.00.

On December 8, 2006, Pro-Form Construction, Inc. ("Pro-Form") was created as a subsidiary of the debtor. AmerLink was the sole shareholder and director of Pro-Form. Shortly thereafter, on December 14, 2006, Spoor, as AmerLink's sole shareholder, elected himself to the debtor's board of directors. Junior, Stephen Gugenheim, and Terry Castle were elected to AmerLink's board of directors on the same date. Gugenheim and Castle refer to themselves as the "outside directors" because they were not members of the board of directors at the time the ESOP was created. On December 19, 2006, two separate entities, In The Woods, Inc. ("Woods") and Harlingen Holdings, Inc. ("Harlingen Holdings") were merged into the debtor. Spoor controlled both Woods and Harlingen Holdings at the time of merger. Less than a week later, on December 21, 2006, AmerLink adopted the first amendment to the ESOP. The effective date of the first amendment was December 30, 2006.

One day prior to the effective date of the first amendment, December 29, 2006, AmerLink and Pro-Form entered into a contribution agreement that provided for the transfer of assets from AmerLink to Pro-Form. In exchange for transferred assets, AmerLink received 100% ownership of Pro-Form. The complaint is somewhat ambiguous on this point. If at incorporation AmerLink was Pro-Form's sole shareholder, then AmerLink already owned Pro-Form when the contribution agreement was executed. A logical deduction from the facts alleged

is that AmerLink transferred assets to Pro-Form for no consideration.  Thereafter, AmerLink transferred ownership of Pro-Form to Spoor; however, this is another area of ambiguity.  To the best of the court's ability to decipher the complexity of interwoven transactions plead in the complaint, it appears Spoor took title to Pro-Form through Harlingen Stables, Inc. ("Harlingen Stables"), a separate entity controlled by Spoor.  In addition to passing title to Pro-Form, AmerLink made continual monthly payments for antecedent debts on behalf of Harlingen Stables.  The same is true for a Spoor owned corporation known as Tall Grass Farms, Inc. ("Tall Grass").

On February 12, 2007, Spoor transferred 49% of his share in AmerLink to the ESOP. The ESOP purchased the stock for $13,250,000.00, evidenced by a promissory note in favor of Spoor (the "ESOP note").  On or about the same date, Capital Community Foundation, Inc. ("Capital"), a non-profit, also received shares of stock in AmerLink. Capital sold the 17,177 shares of AmerLink stock to the ESOP for $350,000.00, evidenced by a promissory note.  As a result of the Woods and Harlingen Holdings mergers, and transactions with the ESOP, the debtors balance sheet dated March 3, 2007, reflects assets of $12,612,328.00 and liabilities of $23,536,671.11.

Six months following the transfers of AmerLink stock, on August 7, 2007, AmerLink entered into three loan transactions with National Consumer Cooperative Bank ("NCCB").  Loan amounts totaled $13,000,000.00: $8,000,000.00; $2,000,000.00; and, $3,000,000.00, respectively.  From the loan proceeds, AmerLink paid the ESOP $4,719,370.36; which, the ESOP in return paid to Spoor on account of the ESOP note.  Spoor allegedly used this payment to fund a certificate of deposit in favor of NCCB; which, the bank required under the lending

terms as security.

## DISCUSSION

The plaintiff asserts the breach of fiduciary duty claim against defendants Spoor, Junior, Slocum, Castle, and Gugenheim. The constructive trust claim has been asserted against Spoor, Junior, Harlingen Stables, Pro-Form, and Tall Grass. Each of these defendants have moved to dismiss the claims against them.

### A. Breach of Fiduciary Duty

Officers and directors generally owe the same duties of good faith and care in executing their responsibilities. See N.C. Gen. Stat. §§55-8-30 & 42; Russell M. Robinson, II, Robinson on North Carolina Corporation Law ,§16.07 (7th ed. 2009). The duty of good faith requires a director or officer to discharge his responsibilities honestly, fairly and with undivided loyalty to the corporation. Id. at §14.02. It also requires management of the corporation in the best interests of all shareholders, and is often viewed as a component of and assessed in conjunction with the duties of due care and loyalty. Id. The duty of care requires a director or officer to conduct himself with the care of an ordinary prudent person in similar circumstances. Id. at §14.03.

In making specific decisions on behalf of the corporation, directors may benefit from the business judgment rule or the right of reliance on other corporate personnel or outside experts. Id. The business judgment rule is primarily a presumption that, in making specific decisions, the directors of a corporation have acted with due care, in good faith, and on an informed basis. Id. at §14.06. It prevents a court from unreasonably interfering with business decisions unless the presumption can be rebutted by evidence that the decision cannot be attributed to any rational

business purpose.  Id.  Directors are also justified in relying on the information, opinions, reports or statements of officers of the corporation, outside advisers, or committees within the board of directors.  N.C. Gen. Stat. §55-8-30(b); Robinson on North Carolina Corporation Law §14.05.  This right to rely is limited to circumstances in which the director reasonably believes that the party is reliable and competent in the area or topic on which the party is presenting information or opinion.  Robinson on North Carolina Corporation Law §14.05.

      The plaintiff alleges that Spoor and Junior violated their fiduciary duties to AmerLink by making decisions for their own personal gain which rendered AmerLink insolvent and destroyed AmerLink's going concern.  Plaintiff asserts that AmerLink has been damaged as a result of the breaches in an amount not less than $25 million.  Spoor and Junior were involved in the specific decisions to adopt the ESOP—Spoor was an officer and director at the time and Junior the president and CEO eleven days prior to its adoption.  The two also approved AmerLink's entrance into three separate loans totaling $13 million with NCCB in August 2007.  Spoor and Junior took on this substantial debt at a time when AmerLink was barely solvent.  Furthermore, as directors and officers, the two approved of paying approximately $4.7 million of the loan proceeds to the ESOP, which in turn repaid this amount to Spoor on the ESOP note.

      The fiduciary duties described above applied to adopting the ESOP and burdening the corporation with the NCCB loans.  Plaintiff has sufficiently pled a breach of fiduciary duty claim as to Spoor and Junior in alleging that these decisions were not made in the best interests of the corporation and were not ones that an ordinary prudent person in similar circumstances would

make.[1]  The court notes the vigorous defenses asserted by defendants, particularly that each was justified in relying on outside experts—namely Horizon—and should benefit from the business judgment rule and statutory right of reliance.  However, the issue before the court is whether the plaintiff has sufficiently stated claims upon which relief can be granted, and not whether defendants have valid defenses to those claims.

Plaintiff has also sufficiently pled a claim of breach of fiduciary duty against defendants Slocum, Castle, and Gugenheim.  Slocum was vice president and secretary of the debtor before the adoption of the ESOP and the NCCB loans.  Castle and Gugenheim were not elected to the board of directors until after the adoption of the ESOP, but they were directors during the approval of the NCCB loans.  Plaintiff asserts the defendants "rubber stamped" documents and transactions devised by Spoor and Junior.  The act of "rubber stamping" a decision is far from the requirement that directors make decisions on an informed basis and does not conform to the ordinary prudent director.  Again, Slocum, Castle, and Gugenheim may be able to successfully assert a defense based on the business judgment rule and right of reliance, but the claim of breach of fiduciary duty is sufficiently asserted.

**B. Constructive Trust**

A constructive trust is an equitable remedy imposed by courts "to avoid or prevent the unjust enrichment of a party . . . [and] arises when equity so demands." 76 <u>Am. Jur. 2d</u> Trusts

---

[1]Defendant Spoor argues the third claim should be dismissed because plaintiff—the chapter 7 trustee—lacks standing under the Employee Retirement Income Security Act ("ERISA") to sue for breach of fiduciary duty.  29 U.S.C. §1132(a) (stating that only participants, beneficiaries, fiduciaries, and the Secretary of Labor may commence breach of duty actions).  This standing provision applies to lawsuits against ERISA-qualified plan fiduciaries. Here, Horizon was the ESOP trustee, therefore compliance with the standing provision applies to suits filed against Horizon, not corporate directors and officers such as Spoor and Junior.

§168 (2010).  A constructive trust is appropriate when the unjustly enriched party obtained their interest in the property "through fraud, breach of duty or some other circumstance making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust." Wilson v. Crab Orchard Development Co., 276 N.C. 198, 211, 171 S.E.2d 873, 882 (1970) (citations omitted).  The party seeking to establish a constructive trust must demonstrate they are entitled to the property interest to which they are deprived. Leatherman v. Leatherman, 297 N.C. 618, 256 S. E. 2d 793 (1979).

Failure to establish the element of fraud is not determinative of a claim for constructive trust; "[i]t is sufficient that legal title has been obtained in violation, express or implied, of some duty owed to the one who is equitably entitled." Colwell Elec. Co. v. Kale-Barnwell Realty & Const. Co., 267 N.C. 714, 719, 148 S.E.2d 856, 860 (citing Bryant v. Bryant, 193 N.C. 372, 137 S.E. 188 (1927)). See also Roper v. Edwards, 323 N.C. 461, 465, 373 S.E.2d 423, 425 (1988) (stating that the existence of fraud need not be established if the facts of the case necessitate imposition of a constructive trust).

While the existence of fraud is not a requirement to constructive trust, a constructive trust is inappropriate where a fiduciary duty is not established as between the parties. Security Nat. Bank of Greensboro v. Educators Mut. Life Ins. Co., 265 N.C. 86, 96, 143 S.E.2d 270, 276 (1965) (citation omitted).  Rather, it has been held that the movant is entitled to a claim for constructive trust where the existence of a fiduciary duty, a breach of that duty, and subsequent enrichment by the non-movant party as a result of that breach is sufficiently established.  Booher v. Frue, 86 N.C.App. 390, 395, 358 S.E.2d 127, 130 (1987), *aff'd per curiam by* 321 N.C. 590, 364 S.E.2d 141 (1988).

Plaintiff has properly pled a claim for constructive trust as to Spoor, but not as to Junior. Plaintiff asserts that both received assets as a result of violations of their duties owed to the debtor. However, plaintiff only includes facts which demonstrate that Spoor took title to property as a result of this breach. The complaint, as discussed *supra*, sufficiently alleges Spoor and Junior breached their fiduciary duties to the corporation in adopting the ESOP and approving the NCCB loans. Plaintiff alleges that Spoor received at least $4.7 million in payment on the ESOP note, which stemmed from the NCCB loan proceeds given in August 2007. However, plaintiff fails to assert what benefit Junior received—other than his salary as president—as a result of the aforementioned decisions made in violation of his duties to AmerLink. Therefore, the claim of constructive trust is dismissed as to Junior, because plaintiff has failed to allege how Junior was unjustly enriched by his breach of duty.

The claims for constructive trust against Harlingen Stables, Tall Grass, and Pro-Form also survive the motions to dismiss. Plaintiff asserts that Spoor used AmerLink assets to pay operating expenses of Harlingen Stables, Tall Grass, and Pro-Form—entities Spoor controlled. Assuming these payments were not on account of antecedent debts that would qualify as preferential transfers subject to avoidance under 11 U.S.C. §547, the payments would have unjustly enriched the three entities. Spoor's use of AmerLink assets to fund his entities, as alleged, of course violates his duty of good faith, care and loyalty to AmerLink and maintaining its solvency.

## CONCLUSION

The court hereby DENIES the motions to dismiss the third claim of breach of fiduciary duties filed by Richard Spoor, John M. Barth, Jr., Thomas Slocum, Terry Castle, and Stephen

Gugenheim.  Defendant John M. Barth, Jr.'s motion to dismiss the fourth claim for constructive trust is GRANTED.  The court DENIES the motions to dismiss the fourth claim of constructive trust filed by Richard Spoor, Harlingen Stables, Pro-Form Construction, and Tall Grass Farms.

In an effort to decrease confusion and fractionalize response deadlines, Bankruptcy Rule 7012(a) shall be temporarily suspended as to all parties and on all claims.  A new deadline for filing responsive pleadings will be set by the court upon entry of the final motion to dismiss order.

**END OF DOCUMENT**