**SO ORDERED.**

**SIGNED this 18 day of March, 2011.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

IN RE:

AMERLINK, LTD.,                              CASE NUMBER: 09-01055-8-JRL
                                             CHAPTER 7
    DEBTOR.


IN RE:

STEPHEN L. BEAMAN,
TRUSTEE
                                             ADVERSARY PROCEEDING
    Plaintiff,                               NO.  10-00164-8-JRL

v.

JOHN M. BARTH, JR. AND WIFE
TRACY M. BARTH; RICHARD B. SPOOR
AND WIFE WALTON SPOOR; JOHN M. BARTH
AND WIFE EILEEN M. BARTH; HARLINGEN
STABLES, INC.; TALL GRASS FARMS, INC.;
PRO-FORM CONSTRUCTION, INC.;
NATIONAL CONSUMER COOPERATIVE BANK;
THOMAS R. SLOCUM; TERRY CASTLE; STEVEN
J. GUGENHEIM; HORIZON TRUST &
INVESTMENT MANAGEMENT, N.A.;
JR INTERNATIONAL HOLDINGS, LLC; AND
CAPITAL COMMUNITY FOUNDATION, INC.,

    Defendants.

**ORDER**

This matter came before the court on the motions to dismiss filed separately by each named defendant. A hearing was held on January 25, 2011, in Raleigh, North Carolina. Prior to the hearing, Walton Spoor, Eileen Barth, Tracy Barth, and Horizon Trust & Investment Management, N.A. were dismissed from the adversary proceeding by consent order. John M. Barth, Sr. was voluntarily dismissed as to the thirteenth claim.

**PROCEDURE**

The underlying bankruptcy was filed by the debtor under chapter 11 on February 11, 2009. On November 23, 2009, the case was converted to a case under chapter 7. Stephen L. Beaman was duly appointed as the chapter 7 trustee. Subsequently, on July 23, 2010, the trustee filed a complaint, initiating this adversary proceeding. The complaint states thirteen specific claims for relief. Due to the complexity of the claims, the court will render decisions in multiple orders. This order will address the first and fifth claim, fraudulent conveyance and unjust enrichment, respectively. In an effort to decrease confusion and fractionalized response deadlines, Bankruptcy Rule 7012(a) shall be temporarily suspended as to all parties and on all claims. A new deadline for filing responsive pleadings will be set by the court upon entry of the final motion to dismiss order.

**BACKGROUND**[1]

When the debtor was formed, defendant Richard B. Spoor ("Spoor") was the sole owner and shareholder of the corporation. AmerLink, Ltd. ("AmerLink") was in the business of log

---

[1] These facts are a fair distillation of the complaint taken in the light most favorable to plaintiff. That said, the complaint is not a model of clarity as it does not always proceed chronologically, and it is not clear which defendants are implicated in the various counts.

home manufacturing, e.g., processing logs into home kits and contracting for installation of homes. In the fall of 2006, groundwork was laid for the creation of an AmerLink employee stock option plan ("ESOP"). The ESOP was adopted on September 29, 2006, with an effective date of October 1, 2005. Horizon Trust & Investment Management, N.A. ("Horizon") acted as trustee for the ESOP. Eleven days prior to adoption of the ESOP, September 18, 2006, John M. Barth, Jr. ("Junior") was hired as President and CEO of the debtor. During this time, Thomas R. Slocum was a director and officer of the debtor, serving as the Vice President and Secretary. AmerLink's business records showed assets, property, and equipment valued at approximately $17,036,117.00 at the time of the ESOP adoption. The same records indicated long term liabilities totaling approximately $11,933,502.00. Retained earnings were $4,895,078.00.

On December 8, 2006, Pro-Form Construction, Inc. ("Pro-Form") was created as a subsidiary of the debtor. AmerLink was the sole shareholder of Pro-Form. Shortly thereafter, on December 14, 2006, Spoor, as AmerLink's sole shareholder, reconstituted AmerLink's board of directors. Spoor was elected chairman of the board. Junior, Slocum, Stephen Gugenheim, and Terry Castle were also elected to AmerLink's board of directors on the same date. Gugenheim and Castle refer to themselves as the "outside directors" because they were not members of the board at the time the ESOP was created. On December 19, 2006, two separate entities, In The Woods, Inc. ("Woods") and Harlingen Holdings, Inc. ("Harlingen Holdings") were merged into the debtor. Spoor controlled both Woods and Harlingen Holdings at the time of merger. Less than a week later, on December 21, 2006, AmerLink adopted the first amendment to the ESOP. The effective date of the first amendment was December 30, 2006.

One day prior to the effective date of the first amendment, December 29, 2006,

AmerLink and Pro-Form entered into a contribution agreement that provided for the transfer of assets from AmerLink to Pro-Form. In exchange for transferred assets, AmerLink received 100% ownership of Pro-Form. Thereafter, AmerLink transferred ownership of Pro-Form to Spoor; however, this is an area of ambiguity. To the best of the court's ability to decipher the complexity of interwoven transactions plead in the complaint, it appears Spoor took ownership to Pro-Form through Harlingen Stables, Inc. ("Harlingen Stables"), a separate entity controlled by Spoor. In addition to passing ownership of Pro-Form, AmerLink made continual monthly payments for alleged antecedent debts on behalf of Harlingen Stables. The same is true for a Spoor-owned corporation known as Tall Grass Farms, Inc. ("Tall Grass").

On February 12, 2007, Spoor transferred 49% of his shares in AmerLink to the ESOP. The ESOP purchased the stock for $13,250,000.00, evidenced by a promissory note in favor of Spoor (the "ESOP note"). On or about the same date, Capital Community Foundation, Inc. ("Capital"), a non-profit, also received shares of stock in AmerLink. Capital sold the 17,177 shares of AmerLink stock to the ESOP for $350,000.00, evidenced by a promissory note. As a result of the Woods and Harlingen Holdings mergers, payment of debts on behalf of Harlingen Stables and Tall Grass, dealings with Pro-Form, and transactions with the ESOP, the debtor's balance sheet dated March 3, 2007 reflects assets of $12,612,328.00 and liabilities of $23,536,671.11.

Six months following the transfers of AmerLink stock, on August 7, 2007, AmerLink entered into three loan transactions with National Consumer Cooperative Bank ("NCCB"). Although the debtor's liabilities outweighed its assets, NCCB loaned a total of $13,000,000.00: $8,000,000.00; $2,000,000.00; and, $3,000,000.00, respectively. From the loan proceeds,

4

AmerLink paid the ESOP $4,719,370.36; which, the ESOP in return paid to Spoor on account of the ESOP note.  Spoor allegedly used this payment to fund a certificate of deposit in favor of NCCB; which, the bank required under the lending terms as security.

The following year, on September 15, 2008, Spoor and Junior formed JR International Holdings, LLC ("JR").  Under the operating agreement dated October 9, 2008, Spoor and Junior were 50% owners of JR.  In consideration for ownership, Spoor transferred his remaining 51% interest in AmerLink valued at $8,000,000.00 to JR.  Junior, having no stock to transfer, agreed to pay an equal sum.  Junior anticipated help financing the $8,000,000.00 from his father, John M. Barth, Sr. ("Senior").  Senior wrote a check to Junior in the amount of $300,000.00; however, no further financial assistance was provided.

The plaintiff asserts that transfers of AmerLink property to Pro-Form, Harlingen Stables, Tall Grass, NCCB, Capital, and Spoor were fraudulent transfers under 11 U.S.C. §548(a)(1).  To the extent Capital is protected under §548(a)(2), the plaintiff contends that it remains liable under the North Carolina Uniform Fraudulent Conveyance Act.  The plaintiff further contends that through said transfers, Pro-Form, Harlingen Stables, Tall Grass, NCCB, Capital, and Spoor were unjustly enriched.  Junior is also listed as a defendant under the claim for unjust enrichment; however, the basis for the claim against Junior does not derive from a fraudulent conveyance, but rather from the formation of JR. Each defendant asserts that the complaint, as alleged,  lacks sufficient factual allegations to show entitlement to relief for fraudulent conveyance or unjust enrichment.

## DISCUSSION

**Fraudulent Conveyance**

A transfer of property, in which the debtor held an interest, made within two years of the petition, may be avoided by the trustee as a fraudulent conveyance on the basis of actual or constructive fraud.[2] Angell v. Ber Care, Inc.(In re Caremerica), 409 B.R. 737, 750 (Bankr. E.D.N.C. 2009). An exception is recognized under § 548(a)(2) for charitable contributions. The law of North Carolina also recognizes fraudulent conveyances pursuant to the Uniform Fraudulent Transfer Act. NC. Gen. Stat. §§ 39-23.1 – 23.12. Under the Uniform Fraudulent Transfer Act, a transfer is fraudulent if made without receiving reasonably equivalent value; and, the debtor was either engaged in a business transaction for which the remaining assets of the debtor were unreasonably small in relation to the transaction, or the debtor knew debt incurred was beyond the debtor's ability to pay. N.C.G.S. § 39-23.4.

---

[2] Pursuant to 11 U.S.C. §548(a)(1), the trustee may avoid a fraudulent conveyance within two years of the petition if the debtor voluntarily or involuntarily -

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
(B)
    (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
    (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation
    (II) engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
    (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured;
    (IV) made such transfer to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

Where actual fraud is plead under § 548(a)(1)(A), the plaintiff must satisfy the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure, as incorporated in Rule 7009 of the Federal Rules of Bankruptcy Procedure.  The heightened standard requires that the party alleging fraud "state with particularity the circumstances constituting fraud. . . ." Fed. R. Civ. P. 9(b); Fed. R. Bankr. P. 7009. Constructive fraud under §548(a)(1)(B) is not subject to the heightened standard of Rule 9(b); but, rather, must satisfy Rule 8(a). Ber Care, 409 B.R. at 755 (Bankr. E.D.N.C. 2009). Under Rule 8(a) of the Federal Rules of Civil Procedure, the complaint must contain a short and plain statement.  As stated in this court's Ber Care decision, "claims to avoid constructively fraudulent transfers must assert factual allegations which show relief is plausible." 409 B.R. at 756 (applying Ashcroft v. Iqbaul, __ U.S. __, 129 S.Ct. 1937, 173 L.Ed.2d 868 (U.S. 2009)).

The complaint does not appear to address the requirements for actual fraud.  There are no assertions that the debtor made a transfer with the intent to hinder, delay, or defraud.  Without such assertions, there is nothing against which to evaluate the standard of pleading under Rule 9(b).  However, the language of the complaint does mirror §548(a)(1)(B), alleging AmerLink received less that equivalent value in exchange for transfers.  The plaintiff asserts that the result of such uneven transactions was the debtor's insolvency – that "significant debts existed and arose due from AmerLink after the ESOP and other transactions." Complaint at paragraph 66.

Pro-Form received assets of AmerLink upon execution of a contribution agreement.  Paragraph 41 states that in return, AmerLink received 100% ownership of Pro-Form.  However, paragraph 25 states that when Pro-Form was created on December 8, 2006, its stock was already owned by AmerLink.  Reference is made  to the schedules attached to the contribution

agreement, marked as Exhibit 1, as evidence in support of stated allegations. These schedules, A, B, and C, list assets transferred with estimated fair market values as of October 31, 2006. The inconsistent statements, along with Exhibit one, lead to the conclusion that the contribution agreement lacked consideration. However, missing from the complaint is a clear statement to this point. Adequate pleadings under §548(a)(1)(B) include a list of the alleged fraudulent transfers, identification of the consideration received by the transferee, and information concerning why the consideration was not equivalent in value. See Ber Care, 409 B.R. at 756. Conclusory statements that the contribution agreement contributed to the debtor's insolvency, without any factual assertion that AmerLink's ownership of Pro-Form was less than equivalent consideration, fails to satisfy the pleading standards established by Ber Care.

      Allegations concerning Spoor also suffer from conclusory statements. Paragraph 64 of the complaint asserts that "[i]n essence, the establishment of an ESOP by AmerLink was for inadequate consideration to AmerLink which required it to incur significant debts. . . ." Spoor funded the ESOP with 49% of his stock in AmerLink. In exchange, the ESOP executed a promissory note in favor of Spoor for $13,250,000.00. Six months later, when AmerLink entered into loan agreements with NCCB, $4,719,370.36 of the loan proceeds was paid to the ESOP. The ESOP in turn forwarded the money to Spoor. While paragraph 64 suggests that execution of the loan agreements pushed a struggling company into insolvency, there is no showing that Spoor's stock was worth more than $13,250,000.00. As for the transfer of proceeds from the ESOP to Spoor, nothing asserted shows that the transaction was more than repayment on the note.

      The plaintiff, in paragraph 47, also notes that Spoor received payments totaling

$7,536,671.11 from the ESOP and/or Amerlink from the date of the note through September 12, 2008. Exhibit 16 is a copy of the Horizon Trust account tracking payments to Spoor on the ESOP note. However, in the same paragraph where allegations are made, the plaintiff acknowledges that these payments were repayment. Again, there is no assertion that Spoor's stock was worth more than $13,250,000.00, which would mean the stock was transferred for a lesser value. While the account spreadsheet highlights the dates upon which payments were made, the amount of individual payments, and the declining balance on the note, it does not establish factual allegations that said payments were fraudulently conveyed or that relief for repayment is plausible.

At this stage of pleadings, payments made on behalf of Harlingen Stables and Tall Grass also fail to satisfy Rule 8(a). Claim one, for fraudulent conveyances, does not outrightly name these defendants. Instead, the complaint refers to the ESOP and "other transactions." Presumably, with Exhibit 24 as support, Harlingen Stables and Tall Grass are classified as "other." Exhibit 24 shows that payments on behalf of Harlingen Stables and Tall Grass were made. However, in the order dated March 11, 2011, the court gave leave to re-plead the claim that such payments were preferential transfers. If these payments were made on an antecedent debt, then they were not fraudulent conveyances but a form of repayment. Conversely, payments not made on an antecedent debt appear to be a gift, or something given without return. Until re-pleading is complete, the court cannot determine if the transfers involving Harlingen Stables and Tall Grass constitute fraudulent conveyances.

There is one caveat with respect to Spoor and Harlingen Stables. A fraudulent conveyance may be sufficiently plead as to Spoor or Harlingen Stables in regards to the

9

transferred Pro-Form stock. Paragraph 41 of the complaint describes the contribution agreement. The final sentence states, "Amerlink then transferred 100% of ownership of Pro-Form to Spoor." However, paragraph number 9 describes Pro-Form as a North Carolina Corporation owned by Harlingen. Nothing in the complaint resolves this inconsistency. Regardless to whom the transfer was made, the conveyance appears sufficiently plead as fraudulent because there is no account of a return; but, because the court is left guessing which party accepted the transfer, no absolute determination can made.

The complaint, as it pertains to NCCB, fails to satisfy pleading requirements. On August 7, 2007, AmerLink entered into three loan agreements with NCCB that totaled $13,000,000.00. It is alleged that AmerLink incurred the loan debt knowing it would never have the ability to repay. However, such allegations only support the second prong of the test for a fraudulent conveyance. This transaction mirrors a typical lender/borrower relationship: AmerLink sought loans, NCCB agreed to lend money, and promissory notes of equivalent value were executed in favor of NCCB. Therefore, the first hurdle of showing an exchange for less than equivalent value is not cleared; and, the complaint lacks factual assertions to the contrary that would otherwise satisfy pleading standards.

Capital is immune from the above analysis pursuant to §548(a)(1) which immunizes transfers classifiable as charitable contributions; however, Capital is not immune under state statutes. It is clearly alleged that on December 30, 2006, AmerLink issued 17,177 shares of preferred stock to Capital, receiving nothing in return. To fully satisfy NC. Gen. Stat. §39-23.4, the plaintiff must also show that the transaction left the debtor under capitalized. Exhibit 9 is an addition to AmerLink's consolidated financial statement titled Notes To Consolidated Financial

10

Statements. The notes state that as of December 31, 2006, AmerLink was in non-compliance with certain loan covenants that included maintaining debt ratios and capital expenditure limitations. A reasonable discernment of these facts is: AmerLink transfered stock to Capital while there was evidence that it was unable to maintain debt ratios to satisfy the terms of other lending agreements; therefore, it was not in AmerLink's best interest to transfer the stock without return. The court finds that the allegations made with respect to Capital, supported by Exhibit 9, satisfy the pleading requirements of Fed. R. Civ. P. 8(a).

**Unjust Enrichment**

If fraudulent conveyances are shown, it is arguable that the party receiving the fraudulent conveyance was unjustly enriched. Unjust enrichment results when a "party confers a benefit upon another which is not required by a contract either express or implied or a legal duty." Progressive American Ins. Co. v. State Farm Mut. Auto Ins. Co., 184 N.C.App. 688, 695, 647 S.E.2d 111, 116 (2007) (quoting Siskron v. Temel-Peck Enterprises, Inc., 26 N.C.App. 387, 390, 216 S.E.2d 441, 444 (1975)). This equitable doctrine is based on the notion that a party should not be unjustly enriched at the expense of another, and that the unjustly enriched party should make restitution of the benefits received. 66 Am. Jur. 2d Restitution and Implied Contracts §8 (2010). To establish a claim for unjust enrichment, it must be demonstrated that: "(i) a party conferred a benefit on the other party; (ii) the benefit . . . must not be conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances; (iii) the benefit must not be gratuitous and it must be measurable; and, (iv) the defendant must have accepted the benefit. Progressive, 184 N.C. App. at 695, 647 S.E.2d at 116.

A claim for unjust enrichment is appropriate where the "property or benefits were

conferred on a defendant under circumstances which give rise to a legal or equitable obligation on the part of the defendant to account for the benefits received, but [for which] the defendant . . . failed to make restitution." Norman v. Nash Johnson & Sons' Farms, Inc., 140 N.C. App. 390, 417, 537 S.E. 2d 248, 266 (2000)(citation omitted). While conferring a benefit is a necessary element to a claim for unjust enrichment, "[n]ot every enrichment of one by the voluntary act of another is unjust." Wright v. Wright, 305 N.C. 345, 350, 289 S.E.2d 347, 351 (1982). Moreover, the "recipient of a benefit voluntarily bestowed without solicitation or inducement is not liable for [the benefits] value." Id. (quoting Rhyne v. Sheppard, 224 N.C. 734, 737, 32 S.E.2d 316, 318 (1944)).

Capital is the only defendant in the analysis above for which fraudulent conveyance is adequately, and clearly plead. However, there are no allegations to support a claim for Capital's unjust enrichment. In fact, the factual allegations in the complaint show just the opposite. Two months after the shares of AmerLink were conveyed, Capital sold the shares to the ESOP for $350,000.00. While it is arguable that AmerLink may have a claim for damages in light of the fraudulent conveyance, the complaint lacks any assertions that Capital still holds assets of AmerLink for its benefit; therefore, the pleading standards for a claim of unjust enrichment are not met.

Although not listed as a defendant on the claim for fraudulent conveyance, Junior is considered a defendant under the claim for unjust enrichment. Paragraph 53 states that Spoor and Junior continued to "protect payments to Spoor and for Barth to gain ownership and control of AmerLink," through the transfer of stock to JR. Spoor transferred his remaining stock in AmerLink, valued at $8,000,000.00, to JR; however, Junior was never able to consummate the

12

terms of his ownership through payment of the same amount. Based on the complaint, it appears that Junior received only his salary from AmerLink for his employment as President and CEO. Therefore, a claim of unjust enrichment as to Junior is unfounded.

## CONCLUSION

There is evidence that AmerLink transferred assets to Pro-Form, made payments to Harlingen Stables and Tall Grass, paid Spoor through the ESOP, and transferred some interest in Pro-Form. It is also asserted that AmerLink's liabilities were increasing during the time of these transfers, though their assets decreased. What remains missing from the complaint under the pleading standards of Rule 8(a) are factual allegations that the return on the alleged transfers was for less than equal value.

Based on the foregoing, the court will ALLOW the motions to dismiss claim number one, fraudulent conveyance, as to Pro-Form, Tall Grass, Harlingen Stables, and Spoor; but, based on the facts alleged, the court finds it appropriate to grant the plaintiff another opportunity to sufficiently plead claims for fraudulent conveyances. The motion to dismiss claim number one as to NCCB is ALLOWED without leave to replead. The motion to dismiss claim number one as to Capital is DENIED.

Because the plaintiff may replead the claim for fraudulent conveyance as to Pro-Form, Tall Grass, Harlingen Stables, and Spoor the court does not at this time determine if the pleading requirements for unjust enrichment are met as to these defendants. The motions to dismiss claim number five as to NCCB, Capital, and Junior are ALLOWED without leave to replead.

END OF DOCUMENT