**SO ORDERED.**

**SIGNED this 18 day of March, 2011.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

AMERLINK, LTD.,                              CASE NUMBER: 09-01055-8-JRL
                                             CHAPTER 7
    DEBTOR.


IN RE:

STEPHEN L. BEAMAN,
TRUSTEE,
                                             ADVERSARY PROCEEDING
    Plaintiff,                               NO.  10-00164-8-JRL

v.

JOHN M. BARTH, JR. AND WIFE
TRACY M. BARTH; RICHARD B. SPOOR
AND WIFE WALTON SPOOR; JOHN M. BARTH
AND WIFE EILEEN M. BARTH; HARLINGEN
STABLES, INC.; TALL GRASS FARMS, INC.;
PRO-FORM CONSTRUCTION, INC.;
NATIONAL CONSUMER COOPERATIVE BANK;
THOMAS R. SLOCUM; TERRY CASTLE; STEVEN
J. GUGENHEIM; HORIZON TRUST &
INVESTMENT MANAGEMENT, N.A.;
JR INTERNATIONAL HOLDINGS, LLC; AND
CAPITAL COMMUNITY FOUNDATION, INC.,

    Defendants.

**ORDER**

This matter came before the court on the motions to dismiss filed separately by each named defendant. A hearing was held on January 25, 2011, in Raleigh, North Carolina. Prior to the hearing, Walton Spoor, Eileen Barth, Tracy Barth, and Horizon Trust & Investment Management, N.A. were dismissed from the adversary proceeding by consent order. John M. Barth ("Senior") was voluntarily dismissed as to the thirteenth claim.

**PROCEDURE**

The underlying bankruptcy was filed by the debtor as a chapter 11 on February 11, 2009. On November 23, 2009, the case was converted to a case under chapter 7. Stephen L. Beaman was duly appointed as the chapter 7 trustee. Subsequently, on July 23, 2010, the trustee filed a complaint, initiating this adversary proceeding. The compliant states thirteen specific claims for relief. Due to the complexity of the claims, the court will render judgment ad seriatim. This order will address claims eleven and twelve, attachment and injunction, respectively.

**BACKGROUND**

When the debtor originated, defendant Richard B. Spoor ("Spoor") was the sole owner and shareholder of the corporation. AmerLink, Ltd. ("AmerLink") was in the business of log home manufacturing, e.g., processing logs into home kits and contracting for installations of homes. In the fall of 2006, groundwork was laid for the creation of an AmerLink employee stock option plan ("ESOP"). The ESOP was adopted on September 29, 2006, with an effective date of October 1, 2006. Horizon Trust & Investment Management, N.A. ("Horizon") acted as trustee for the ESOP. Eleven days prior to adoption of the ESOP, September 18, 2006, John M. Barth, Jr. ("Junior") was hired as President and CEO of the debtor. During this time, Thomas R.

Slocum was an officer of the debtor serving as the Vice President and Secretary. AmerLink's business records showed assets, property, and equipment valued at approximately $17,036,117.00 at the time of the ESOP adoption. The same records indicated long term liabilities totaling approximately $11,933,502.00. Retained earnings were $4,895,078.00.

On December 8, 2006, Pro-Form Construction, Inc. ("Pro-Form") was created as a subsidiary of the debtor. AmerLink was the sole shareholder and director of Pro-Form. Shortly thereafter, on December 14, 2006, Spoor, as AmerLink's sole shareholder, elected himself to the debtor's board of directors. Junior, Stephen Gugenheim, and Terry Castle were elected to AmerLink's board of directors on the same date. Gugenheim and Castle refer to themselves as the "outside directors" because they were not members of the board of directors at the time the ESOP was created. On December 19, 2006, two separate entities, In The Woods, Inc. ("Woods") and Harlingen Holdings, Inc. ("Harlingen Holdings") were merged into the debtor. Spoor controlled both Woods and Harlingen Holdings at the time of merger. Less than a week later, on December 21, 2006, AmerLink adopted the first amendment to the ESOP. The effective date of the first amendment was December 30, 2006.

One day prior to the effective date of the first amendment, December 29, 2006, AmerLink and Pro-Form entered into a contribution agreement that provided for the transfer of assets from AmerLink to Pro-Form. In exchange for transferred assets, AmerLink received 100% ownership of Pro-Form. The complaint is somewhat ambiguous on this point. If at incorporation AmerLink was Pro-Form's sole shareholder, then AmerLink already owned Pro-Form when the contribution agreement was executed. A logical deduction from the facts alleged is that AmerLink transferred assets to Pro-Form for no consideration. Thereafter, AmerLink

transferred ownership of Pro-Form to Spoor; however, this is another area of ambiguity. To the best of the court's ability to decipher the complexity of interwoven transactions plead in the complaint, it appears Spoor took title to Pro-Form through Harlingen Stables, Inc. ("Harlingen Stables"), a separate entity controlled by Spoor. In addition to passing title to Pro-Form, AmerLink made continual monthly payments for antecedent debts on behalf of Harlingen Stables. The same is true for a Spoor owned corporation known as Tall Grass Farms, Inc. ("Tall Grass").

On February 12, 2007, Spoor transferred 49% of his share in AmerLink to the ESOP. The ESOP purchased the stock for $13,250,000.00, evidenced by a promissory note in favor of Spoor (the "ESOP note"). On or about the same date, Capital Community Foundation, Inc. ("Capital"), a non-profit, also received shares of stock in AmeriLink from Spoor. Capital sold the 17,177 shares of AmerLink stock to the ESOP for $350,000.00, evidenced by a promissory note. As a result of the Woods and Harlingen Holdings mergers, and transactions with the ESOP, the debtors balance sheet dated March 3, 2007, reflects assets of $12,612,328.00 and liabilities of $23,536,671.11.

Six months following the transfers of AmerLink stock, on August 7, 2007, AmerLink entered into three loan transactions with National Consumer Cooperative Bank. Loan amounts totaled $13,000,000.00: $8,000,000.00; $2,000,000.00; and, $3,000,000.00, respectively. From the loan proceeds, AmerLink paid the ESOP $4,719,370.36; which, the ESOP in return paid to Spoor on account of the ESOP note. Spoor allegedly used this payment to fund a certificate of deposit in favor of NCCB; which, the bank required under the lending terms as security.

The following year, on September 15, 2008, Spoor and Junior formed JR International

Holdings, LLC ("JR"). Under the operating agreement dated October 9, 2008, Spoor and Junior were 50% owners of JR. In consideration for ownership, Spoor transferred his remaining 51% interest in AmerLink valued at $8,000,000.00 to JR. Junior, having no stock to transfer, agreed to pay an equal sum. Junior anticipated help financing the $8,000,000.00 from his father, John M. Barth, Sr. ("Senior"). Senior wrote a check to Junior in the amount of $300,000.00; however, no further financial assistance was provided.

## DISCUSSION

Plaintiff's complaint seeks an order attaching all assets of defendants Harlingen Stables, Tall Grass, Pro-Form, JR, Junior and Spoor. The request for attachment is based on plaintiff's belief that these defendants have and may continue to transfer assets to defeat claims of creditors against them. In the alternative, plaintiff seeks a preliminary or permanent injunction prohibiting these defendants from making any transfer or series of transfers of assets to any third party in excess of $3,000.00 pending final resolution of the adversary proceeding.

North Carolina law provides the remedies of attachment and injunction to creditors injured by debtors who violated the Uniform Fraudulent Transfer Act. N.C. Gen. Stat. §39-23.7. These remedies may only be awarded after compliance with the procedure prescribed in Article 35 and 37 of Chapter 1 of the North Carolina General Statutes. N.C. Gen. Stat. §39-23.7(a)(2). Attachment is an ancillary proceeding to a pending principal action. N.C. Gen. Stat. §1-440.1. Plaintiff must state by affidavit that he has commenced an action to secure a judgment for money, the amount thereof, the nature of such action, and grounds for attachment. N.C. Gen. Stat. §1-440.11 A verified complaint may be used as the affidavit required by the statute. §1-440.11(b).

Plaintiff's grounds for attachment are that the defendants have or are about to act with the intent to defraud their creditors. Section 1-440.11 requires that an affidavit for attachment based on intent to defraud creditors include facts and circumstances supporting such allegations. §1-440.11(a)(2)(b). These facts must be set forth in a "definite and distinct manner" otherwise the affidavit is fatally defective. Connolly v. Sharpe, 270 S.E.2d 564, 566 (N.C. Ct. App. 1980). Where plaintiff has the belief that defendants are about to dispose of property with the intent to defraud, the affidavit "must give the sources of information and recite positive facts reasonably supporting the belief." Id. at 567.

The court will address plaintiff's request for attachment in a separate ancillary proceeding once a sufficient affidavit or amended verified complaint has been filed. Plaintiff has not provided sufficient facts to support his allegation that defendants are about to or have acted with the intent to defraud their creditors. Plaintiff states that defendants Spoor and Junior have listed and intend to sell their residences and that based on their past conduct, each will shield assets and proceeds due to them from claims of creditors. The assertion that two of the defendants have listed their homes for sale alone is insufficient. The North Carolina Court of Appeals found an affidavit insufficient for asserting that the defendants had destroyed their house one week after obtaining a $5,000.00 increase in insurance coverage. Connolly, 270 S.E.2d at 567. The circumstances were suspicious but not described with sufficient particularity to demonstrate a fraudulent disposition of property. Id. (citing Hughes v. Person, 63 N.C. 548 (1869)). Given that an increase in insurance coverage followed by destruction of the property was insufficient to establish an intent to dispose of property, the defendants' mere listing of their residences for sale is similarly insufficient to demonstrate the need for the "extraordinary

remedy" of prejudgment attachment.  Id.

As to a preliminary injunction against transfers of property by the defendants, the court, again, does not dismiss the claim, but will address the request in a separate ancillary proceeding. A preliminary injunction may be issued when the plaintiff's complaint or an affidavit establishes plaintiff is entitled to such relief based on a threat that the defendant will dispose of property with the intent to defraud the plaintiff.  N.C. Gen. Stat. §1-485.  Plaintiff's complaint states that the defendants may shield their assets from creditors' claims, and that plaintiff is entitled to enjoin defendants from making transfers in excess of $3,000.00.  The court cannot determine from the complaint alone whether these concerns are valid and requires a separate proceeding and further affidavits or an amended complaint to determine whether an injunction is warranted.

The plaintiff has leave to file amended pleadings and/or affidavits, at which time the court will address claims eleven and twelve for attachment and injunction.

**END OF DOCUMENT**.