**SO ORDERED.**

**SIGNED this 24 day of March, 2011.**

_____
 **J. Rich Leonard**
 **United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:

| | |
|---|---|
| AMERLINK, LTD., | CASE NUMBER: 09-01055-8-JRL |
| | CHAPTER 7 |
| DEBTOR. | |

IN RE:

| | |
|---|---|
| STEPHEN L. BEAMAN, | ADVERSARY PROCEEDING |
| TRUSTEE | NO. 10-00164-8-JRL |
| Plaintiff, | |

v.

JOHN M. BARTH, JR. AND WIFE
TRACY M. BARTH; RICHARD B. SPOOR
AND WIFE WALTON SPOOR; JOHN M. BARTH
AND WIFE EILEEN M. BARTH; HARLINGEN
STABLES, INC.; TALL GRASS FARMS, INC.;
PRO-FORM CONSTRUCTION, INC.;
NATIONAL CONSUMER COOPERATIVE BANK;
THOMAS R. SLOCUM; TERRY CASTLE; STEVEN
J. GUGENHEIM; HORIZON TRUST &
INVESTMENT MANAGEMENT, N.A.;
JR INTERNATIONAL HOLDINGS, LLC; AND
CAPITAL COMMUNITY FOUNDATION, INC.,

 Defendants.

**ORDER**

This matter came before the court on the motions to dismiss filed separately by each named defendant. A hearing was held on January 25, 2011, in Raleigh, North Carolina. Prior to the hearing, Walton Spoor, Eileen Barth, Tracy Barth, and Horizon Trust & Investment Management, N.A. were dismissed from the adversary proceeding by consent order. John M. Barth, Sr. was voluntarily dismissed as to the thirteenth claim.

**PROCEDURE**

The underlying bankruptcy was filed by the debtor under chapter 11 on February 11, 2009. On November 23, 2009, the case was converted to a case under chapter 7. Stephen L. Beaman was duly appointed as the chapter 7 trustee. Subsequently, on July 23, 2010, the trustee filed a complaint, initiating this adversary proceeding. The complaint states thirteen specific claims for relief. Due to the complexity of the claims, the court will render decisions in multiple orders. This order will address the tenth claim, civil conspiracy. In an effort to decrease confusion and fractionalized response deadlines, Bankruptcy Rule 7012(a) shall be temporarily suspended as to all parties and on all claims. A new deadline for filing responsive pleadings will be set by the court upon entry of the final motion to dismiss order.

**BACKGROUND**[1]

When the debtor was formed, defendant Richard B. Spoor ("Spoor") was the sole owner and shareholder of the corporation. AmerLink, Ltd. ("AmerLink") was in the business of log home manufacturing, e.g., processing logs into home kits and contracting for installation of

---

[1] These facts are a fair distillation of the complaint taken in the light most favorable to plaintiff. That said, the complaint is not a model of clarity as it does not always proceed chronologically, and it is not clear which defendants are implicated in the various counts.

homes. In the fall of 2006, groundwork was laid for the creation of an AmerLink employee stock option plan ("ESOP"). The ESOP was adopted on September 29, 2006, with an effective date of October 1, 2005. Horizon Trust & Investment Management, N.A. ("Horizon") acted as trustee for the ESOP. Eleven days prior to adoption of the ESOP, September 18, 2006, John M. Barth, Jr. ("Junior") was hired as President and CEO of the debtor. During this time, Thomas R. Slocum was a director and officer of the debtor, serving as the Vice President and Secretary. AmerLink's business records showed assets, property, and equipment valued at approximately $17,036,117.00 at the time of the ESOP adoption. The same records indicated long term liabilities totaling approximately $11,933,502.00. Retained earnings were $4,895,078.00.

On December 8, 2006, Pro-Form Construction, Inc. ("Pro-Form") was created as a subsidiary of the debtor. AmerLink was the sole shareholder of Pro-Form. Shortly thereafter, on December 14, 2006, Spoor, as AmerLink's sole shareholder, reconstituted AmerLink's board of directors. Spoor was elected chairman of the board. Junior, Slocum, Stephen Gugenheim, and Terry Castle were also elected to AmerLink's board of directors on the same date. Gugenheim and Castle refer to themselves as the "outside directors" because they were not members of the board at the time the ESOP was created. On December 19, 2006, two separate entities, In The Woods, Inc. ("Woods") and Harlingen Holdings, Inc. ("Harlingen Holdings") were merged into the debtor. Spoor controlled both Woods and Harlingen Holdings at the time of merger. Less than a week later, on December 21, 2006, AmerLink adopted the first amendment to the ESOP. The effective date of the first amendment was December 30, 2006.

One day prior to the effective date of the first amendment, December 29, 2006, AmerLink and Pro-Form entered into a contribution agreement that provided for the transfer of

assets from AmerLink to Pro-Form.  In exchange for transferred assets, AmerLink received 100% ownership of Pro-Form.  Thereafter, AmerLink transferred ownership of Pro-Form to Spoor; however, this is an area of ambiguity.  To the best of the court's ability to decipher the complexity of interwoven transactions plead in the complaint, it appears Spoor took ownership to Pro-Form through Harlingen Stables, Inc. ("Harlingen Stables"), a separate entity controlled by Spoor.  In addition to passing ownership of Pro-Form, AmerLink made continual monthly payments for alleged antecedent debts on behalf of Harlingen Stables.  The same is true for a Spoor-owned corporation known as Tall Grass Farms, Inc. ("Tall Grass").

On February 12, 2007, Spoor transferred 49% of his shares in AmerLink to the ESOP. The ESOP purchased the stock for $13,250,000.00, evidenced by a promissory note in favor of Spoor (the "ESOP note").  On or about the same date, Capital Community Foundation, Inc. ("Capital"), a non-profit, also received shares of stock in AmerLink. Capital sold the 17,177 shares of AmerLink stock to the ESOP for $350,000.00, evidenced by a promissory note.  As a result of the Woods and Harlingen Holdings mergers, payment of debts on behalf of Harlingen Stables and Tall Grass, dealings with Pro-Form, and transactions with the ESOP, the debtor's balance sheet dated March 3, 2007 reflects assets of $12,612,328.00 and liabilities of $23,536,671.11.

Six months following the transfers of AmerLink stock, on August 7, 2007, AmerLink entered into three loan transactions with National Consumer Cooperative Bank ("NCCB"). Although the debtor's liabilities outweighed its assets, NCCB loaned a total of $13,000,000.00: $8,000,000.00; $2,000,000.00; and, $3,000,000.00, respectively.  From the loan proceeds, AmerLink paid the ESOP $4,719,370.36; which, the ESOP in return paid to Spoor on account of

the ESOP note. Spoor allegedly used this payment to fund a certificate of deposit in favor of NCCB; which, the bank required under the lending terms as security.

The following year, on September 15, 2008, Spoor and Junior formed JR International Holdings, LLC ("JR"). Under the operating agreement dated October 9, 2008, Spoor and Junior were 50% owners of JR. In consideration for ownership, Spoor transferred his remaining 51% interest in AmerLink valued at $8,000,000.00 to JR. Junior, having no stock to transfer, agreed to pay an equal sum. Junior anticipated help financing the $8,000,000.00 from his father, John M. Barth, Sr. ("Senior"). Senior wrote a check to Junior in the amount of $300,000.00; however, no further financial assistance was provided.

The plaintiff asserts that Spoor, Junior, Senior, Gugenheim, Castle, and Slocum conspired by entering agreements through which Spoor could extract as much money out of AmerLink as possible for his personal benefit while paving the way for Junior to take ownership and control of the debtor. These agreements were, in the opinion of the plaintiff, done in violation of statutory duties owed by officers and directors of corporations. In response, the defendants assert that the plaintiff fails to plead a plausible claim for civil conspiracy.

## DISCUSSION

There is no separate action for civil conspiracy in North Carolina. Dove v. Harvey, 168 N.C. App. 687, 690, 608 S.E.2d 798, 800 (N.C. App. 2005). When recovery is sought on the basis of civil conspiracy, it is the sufficiency of the plead wrongful acts which is important. Id. To wit, "[t]he gravamen of the action is the resultant wrong, and not the conspiracy itself." Muse v. Morrison, 234 N.C. 195, 198, 66 S.E.2d 783, 785 (1951)(citing Holt v. Holt, 232 N.C. 497, 500, 61 S.E.2d 448, 451 (1950)). The wrongful act is more fundamental to recovery

5

because the "charge of conspiracy itself does nothing more than associate the defendants together and perhaps liberalize the rules of evidence. . . ." Dove, 168 N.C. App. at 690, 608 S.E.2d at 800 (citing Fox v. Wilson, 85 N.C. App. 292, 300, 354 S.E.2d 737, 742-43 (1987)).

A threshold requirement in a cause of action for damages resulting from a conspiracy is the showing that a conspiracy existed. Dove, 168 N.C. App. at 690-691, 608 S.E.2d at 801. Existence is established by proof of an agreement between two or more persons. Id. The agreement "must be sufficient to create more than a suspicion or conjecture. . . ." Id. Moving beyond the threshold, North Carolina defines civil conspiracy as: 1) an agreement between two or more individuals; 2) to do an unlawful act or do a lawful act in an unlawful way; 3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and 4) pursuant to a common scheme. Mace v. Pyatt, 691 S.E.2d 81, 87 (N.C. App. 2010)(citing Strickland v. Hedrick, 194 N.C. App.1, 19, 669 S.E.2d 61, 72 (2008)).

The plaintiff alleges that agreements were entered into for the purpose of permitting Spoor to extract money from the debtor and place Junior in a position of ownership. The agreements were allegedly unlawful and in violation of statutory and common law. In an effort to establish the threshold and first prong requirement of an agreement, paragraph 122 states "[t]he defendants entered into numerous agreements generally described herein among themselves and others." Claim ten continues to allege that the agreements existed for the commission of wrongful acts, and that such acts amount to civil conspiracy which damaged the debtor in an amount not less than $25,000,000.00. The court finds that the allegations of civil conspiracy are not sufficiently plead.

Paragraph 122 of the complaint confirms its own generality. Saying that numerous

6

agreements were entered without specifying which agreements are subject to these allegations is conclusory.  Because the court is left guessing which agreements the allegations pertain to, and who was party to such agreements, it cannot determine with any certainty that the agreements were in fact in furtherance of wrongful acts that injured the plaintiff.  Such vague statements not only hinder the court's ability to evaluate the claim, but leave defendants to conjecture about responsive pleadings.  Despite the flaws of the claim for civil conspiracy, the plaintiff does clearly allege that the purpose of the conspiracy was to deplete the debtor's assets for Spoor's personal gain; however, without adequately addressing all of the other required elements of civil conspiracy, the claim does not survive on this alone.

Based on the foregoing, the motions to dismiss the claim for civil conspiracy are **ALLOWED**; nevertheless, the court will grant the plaintiff leave to replead.  The facts present a number of possible agreements, which if more specifically plead, may support a claim for civil conspiracy.  Also, as noted in the order in this case dated March 2, 2011, pertaining to the RICO claims, the alleged facts do support the concept of a singular scheme.  Therefore, the court finds it appropriate to grant the plaintiff another opportunity to sufficiently plead a civil conspiracy cause of action.

**END OF DOCUMENT**